UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

JUSTIN SQUEZELLO,

                        Plaintiff,        17 cv.

     v.                                  **COMPLAINT AND**
                                         **JURY TRIAL DEMAND**

CROWDTAP, INC. and MATT B. BRITTON,

                        Defendants.
_____

Plaintiff JUSTIN SQUEZELLO, by and through his undersigned attorneys, complains of defendants and alleges as follows:

### Preliminary Statement

1. Plaintiff brings this action to recover monetary damages based upon Defendants' violations of the Family and Medical Leave Act of 1993, as amended, (the "FMLA"), 29 U.S.C. §2601 *et seq.*, and the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. §1161 *et seq*.

### Jurisdiction and Venue

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331.

3. This action properly lies in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. §1391 because the unlawful discriminatory conduct occurred within the County of New York, State of New York.

### PARTIES

4. Plaintiff JUSTIN SQUEZELLO, was at all times relevant herein, a domiciliary of the State of New York, residing in the County of Westchester.

5. Upon information and belief, defendant CROWDTAP, INC. ("CROWDTAP") is

a domestic business corporation authorized to do business in the State of New York with its primary place of business located at 625 Broadway, New York, NY 10012.

6. Upon information and belief, defendant MATT B. BRITTON ("BRITTON") is, and was at all relevant times, the Chief Executive Officer of defendant CROWDTAP, INC.

7. Upon information and belief, defendant BRITTON is a resident of the State of New York.

8. At all times relevant herein, CROWDTAP is and was an "employer" within the meaning of 29 U.S.C. §1002(5).

9. At all times relevant herein, Plaintiff was an "eligible employee" of CROWDTAP within the meaning of 29 U.S.C. §2611(2)(A).

10. At all times relevant herein, Plaintiff was an "employee" within the meaning of 29 U.S.C. §1002(6).

11. At all times relevant herein, Plaintiff was a "person" within the meaning of 29 U.S.C. §1002(9) and 29 U.S.C. §203(a).

12. At all times relevant herein, Plaintiff was a "participant" within the meaning of 29 U.S.C. §1002(7).

13. At all times relevant herein, Plaintiff was a "covered employee" within the meaning of 29 U.S.C. §1167(2).

14. At all times relevant herein, Plaintiff had a "serious health condition" within the meaning of 29 U.S.C. §2611(11).

15. Upon information and belief, at all times relevant herein, defendant CROWDTAP employed more than two (2) employees, including Plaintiff, who regularly were and are engaged in commerce within the meaning of 29 U.S.C. §1002(12).

16. At all times relevant herein, defendant CROWDTAP'S provision of medical

benefits to Plaintiff is an "employee welfare benefit plan" under 29 U.S.C. §1002(1) and a "group health plan" under 29 U.S.C. §1167(1).

17. Plaintiff worked for defendant CROWDTAP and completed over 1250 hours of work during the year immediately preceding his request for leave pursuant to the FMLA.

18. At all times relevant herein, defendant CROWDTAP employed more than fifty (50) employees.

19. At all times relevant herein, defendant BRITTON was the individual corporate officer of defendant CROWDTAP who controlled in whole or in part Plaintiff's ability to take a leave of absence and return to his position.

20. At all times relevant herein, defendant BRITTON was Plaintiff's employer within the meaning of 29 U.S.C. §2611(4)(a).

21. The termination of Plaintiff's employment by Defendants is a "qualifying event" within the meaning of 29 U.S.C. §1163(2).

**Facts Common to All Claims**

22. On or about September 1, 2015, Plaintiff began his employment with defendant CROWDTAP as its Chief Financial Officer.

23. Over the course of his employment, Plaintiff performed the functions of his position in an exemplary manner.

24. Plaintiff received no adverse performance reviews from Defendants.

25. Upon information and belief, in or about March 2017, defendant BRITTON was officially hired as CROWDTAP'S Chief Executive Officer.

26. Upon information and belief, beginning on or about April 28, 2017, Plaintiff began exhibiting increased symptoms of severe anxiety and stress, confusion, speaking out of

sorts, and was not sleeping regularly.

27. Upon information and belief, Plaintiff's symptoms were caused by work and his work environment.

28. On or about May 1, 2017, plaintiff advised defendant CROWDTAP'S Head of Human Resources, GeneMarie Crowe, in an extensive verbal conversation that he needed time off from work because of the serious physical and mental conditions that had developed and been exhibited.

29. On or about May 1, 2017, plaintiff advised defendant CROWDTAP's Head of Human Resources, GeneMarie Crowe, in an extensive verbal conversation that he had been diagnosed in the past as clinically depressed and that he was feeling similarly depressed because of the stress of work; that he needed time to find a medical specialist to treat his depression; and, he went into detail about his past medical psychological history.

30. On or about May 1, 2017, it was plaintiff's impression that Ms. Crowe did not believe him.

31. On or about May 1, 2017, Ms. Crowe referred Plaintiff to defendant BRITTON, to request the time off he sought.

32. At all relevant times, CROWDTAP publicly touted Unlimited PTO (paid time off) as one of its employee benefits and perks.

33. At all relevant times, CROWDTAP publicly touted Flexible Leave Time as one of its employee benefits and perks.

34. Upon information and belief, Defendants had previously permitted other employees to take unlimited leave time from work.

35. Upon information and belief, on or about May 1, 2017, defendant BRITTON

confirmed to Plaintiff that he would be allowed to take a brief time off by applying his unused paid paternity leave.

36. On or about May 2, 2017, Plaintiff expressed his gratitude to defendant BRITTON for the week off from work.

37. On or about May 3, 2017, Plaintiff fell unconscious outside of the workplace and was immediately hospitalized.

38. Upon admittance to the hospital, Plaintiff was diagnosed with acute stress reaction, possibly related to work, high blood pressure, and sleep deprivation.

39. On or about May 4, 2017, Plaintiff was transferred to the inpatient psychiatric unit and diagnosed with adjustment disorder and mixed disturbance of emotions and conduct.

40. On or about May 5, 2017, Plaintiff's wife advised Defendants in writing that Plaintiff had been hospitalized and that he would be out of work until further notice.

41. By email, dated May 5, 2017, Plaintiff provided a letter from his treating physician indicating that Plaintiff would be unable to work until further notice.

42. By email, dated May 6, 2017, Defendant acknowledged receipt of the notification of Plaintiff's hospitalization.

43. On or about May 9, 2017, Plaintiff learned that his recent newborn baby had not been added to the family's health coverage provided by defendant CROWDTAP.

44. By email, dated May 18, 2017, Plaintiff again advised Defendants of the need for further medical treatment and leave time from work.

45. By email, dated May 18, 2017, Defendants advised that Plaintiff's son had been added to Plaintiff's health insurance coverage.

46. Upon information and belief, Defendant's affirmative advice to the contrary,

Plaintiff's son was never added to the family's health insurance coverage.

47. Plaintiff received treatment for his physical and mental condition in an Intensive Outpatient Program from May 16, 2017 through June 9, 2017.

48. Notwithstanding the treatment he received, Plaintiff's doctors advised Defendants that Plaintiff required a yet undetermined amount of leave time from work.

49. Notwithstanding the advice of his physicians to take additional leave from work, on or about June 12, 2017, Plaintiff attempted to return to work.

50. On or about June 12, 2017, Plaintiff was asked to leave his employer's premises and was told that he was no longer working for defendant CROWDTAP.

51. Because of Plaintiff's physical and mental condition, Plaintiff required additional leave time from work.

52. On or about June 12, 2017, Plaintiff provided Defendants with additional medical documentation regarding his medical treatment that necessitated his leave time from May 16, 2017 through June 9, 2017.

53. At no time prior to June 12, 2017 had Plaintiff's employment been terminated.

54. At no time did Plaintiff resign his employment.

55. At no time was Plaintiff asked to submit a written resignation letter.

56. Upon information and belief, it was defendant CROWDTAP's policy to require a resignation letter from any resigning employees.

57. Prior to June 12, 2017, Defendants were on actual and constructive notice of Plaintiff's need for additional leave time from work.

58. Prior to and after June 12, 2017, Defendants did not engage in an interactive process with Plaintiff to determine if Plaintiff required additional leave time.

59.     Plaintiff's employment was terminated because of his request for leave time to which he was entitled by law and by Defendants own internal corporate policies.

60.     The termination of Plaintiff's employment by Defendants was wrongful.

61.     After Defendants' terminated Plaintiff's employment on or about June 12, 2017, which constituted a qualifying event, Defendants were required to advise Plaintiff of his rights under COBRA, but failed to do so.

### FIRST CLAIM FOR RELIEF
### (Violation of the FMLA)

62.     Plaintiff repeats, reiterates and realleges each and every allegation contained in the foregoing paragraphs as if set forth at length herein.

63.     On or about June 12, 2017, Defendants terminated Plaintiff's employment for the exercise of rights guaranteed under the FMLA, in violation of 29 U.S.C. §2615(a)(2).

64.     Defendants unlawfully interfered, discouraged and/or restrained Plaintiff's exercise of rights provided under law in violation of the FMLA.

65.     The conduct of the Defendants was done in conscious disregard of Plaintiff's rights under the FMLA.

66.     Plaintiff is entitled to monetary and equitable relief, including, but not limited to an award of front pay in the form of lost wages and benefits, interest and reasonable attorneys' fees in an amount to be determined at trial.

### SECOND CLAIM FOR RELIEF
### (FMLA - Retaliation)

67.     Plaintiff repeats, reiterates and realleges each and every allegation contained in the foregoing paragraphs as if set forth at length herein

68.     Plaintiff has been retaliated against by Defendants due to the exercise of his rights

7

guaranteed under the FMLA, which resulted in the termination of Plaintiff's employment and a loss of Plaintiff's medical insurance and disability benefits coverage.

69. As a proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer substantial losses of past and future earnings, deferred compensation, bonuses and other employment benefits.

70. As a further proximate result of Defendants' actions, Plaintiff suffered and continues to suffer severe and lasting embarrassment, humiliation, mental and physical anguish and other incidental and consequential damages and expenses.

71. The conduct of Defendants was done in conscious disregard of Plaintiff's rights.

### THIRD CLAIM FOR RELIEF
### (Violation of COBRA)

72. Plaintiff repeats, reiterates and realleges each and every allegation contained in the foregoing paragraphs as if set forth at length herein.

73. Defendants failed to provide Plaintiff with continuing group health plan coverage in violation of COBRA.

74. Plaintiff is entitled to an award of compensatory damages in the amount of $110.00 dollars per day for 18 months as provided by statute.

75. Plaintiff is entitled to an award of compensatory damages in the amount of his and his family's actual medical expenses.

76. Plaintiff is entitled to a reinstatement and continuation of his medical insurance coverage through his employer from May 1, 2017 until appropriate notice is provided pursuant to COBRA.

**JURY DEMAND**

77. Plaintiff demands a jury in this action for all claims stated herein.

WHEREFORE, Plaintiff JUSTIN SQUEZELLO, demands judgment against defendants CROWDTAP, INC. and MATT B. BRITTON, as follows:

(i) On the First Claim for Relief, an award of Plaintiff's actual damages for past and future earnings, bonuses, other employment benefits, in an amount to be determined at trial plus reasonable attorneys' fees, costs and interest;

(ii) On the Second Claim for Relief, an award of Plaintiff's actual damages for past and future earnings, bonuses, other employment benefits, in an amount to be determined at trial plus reasonable attorneys' fees, costs and interest;

(iii) On the Third Claim for Relief, an award of the maximum allowable statutory damages of $110.00 per day for 18 months, plus interest and Plaintiff's actual medical costs;

(iv) An order-directing Defendants to reinstate and continue Plaintiff's medical insurance coverage until appropriate notice has been provided pursuant to COBRA; and

(v) For such other and further relief as may be just and proper.

Dated: July 19, 2017
New York, NY

**LAW OFFICES OF ALBERT RIZZO, P.C.**

s/ *Albert Rizzo*

_____
By: Albert Rizzo, Esq.
830 Third Avenue
New York, NY 10022
Tel. 212-679-5799
arizzo@rizzolawoffices.com
Attorneys for Plaintiff